# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

| | |
|---|---|
| **LYNN PENNINGTON,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 4:21-cv-00064** |
| **DANNY PENNINGTON,** | |
| **and** | |
| **VALORA PENNINGTON,** | |
| **and** | |
| **APRIL EDWARDS (individually),** | |
| **and** | |
| **SHERIFF MARK BARRICK (individually),** | |
| **and** | |
| **JOHN FOSTER (individually),** | |
| **Defendants.** | |

## COMPLAINT

### SUMMARY OF ACTION

Lynn Pennington ("the Plaintiff" or "Lynn Pennington"), by counsel, submits this Complaint against April Edwards, Sheriff Mark Barrick, and John Foster for false imprisonment and malicious prosecution, as well as corollary constitutional torts giving rise to jurisdiction in this court. Lynn Pennington also submits this complaint against Danny Pennington & Valora Pennington for false imprisonment, malicious prosecution, abuse of process, civil conspiracy, statutory conspiracy to

injure her reputation in her trade or business, Va. Code Ann. §§ 18.2-499—500, and violation of the Virginia Computer Crimes Act, Va. Code Ann. §§ 18.2-152.4, 152.12.

## Table of Contents

The Parties ................................................................................................................... 1

Jurisdiction & Venue .................................................................................................... 1

Background ................................................................................................................... 2

    Danny Pennington & Valora's Threats & Statements to Law Enforcement ............................ 3

    The Law Enforcement Investigation & Charging Decision ..................................................... 5

    The Arrest Warrant ................................................................................................................. 7

    The Arrest & Its Aftermath ................................................................................................... 10

Count I: False Imprisonment (All Defendants) ........................................................... 11

Count II: Fourth Amendment Tort for False Imprisonment (Detective Foster & Deputy Edwards) ...................................................................................................................13

Count III: Malicious Prosecution (All Defendants) ..................................................... 15

Count IV: Fourth Amendment Tort for Malicious Prosecution
(Detective Foster & Deputy Edwards) .........................................................................17

Count V: Abuse of Process (Defendants Danny Pennington & Valora Pennington) .................... 20

Count VI: Civil Conspiracy (Danny Pennington & Valora Pennington) ....................................... 22

Count VII: Statutory Conspiracy (Va. Code Ann. §§ 18.2-499—500)
(Danny Pennington & Valora Pennington) ................................................................. 24

Count VIII: Violation of the Virginia Computer Crimes Act (as to Defendant Valora Pennington)
(Va. Code Ann. §§ 18.2-152.7, 152.12) ....................................................................... 27

Prayer for Relief .......................................................................................................... 27

Jury Demand ............................................................................................................... 28

## The Parties

1.  Lynn Pennington is a resident of Gloucester County.

2.  Danny Pennington & Valora Pennington reside in Mathews County.

3.  April Edwards is an employee of the Mathews County Sheriff's Department, where she works as a Sheriff's Deputy, a law enforcement officer. At all relevant times identified in the Complaint, Deputy Edwards acted in the course and scope of her employment for Mathews County.

4.  Mark Barrick is the elected Sheriff of Mathews County. For all state law tort claims asserted against his Deputy, April Edwards, Sheriff Barrick remains liable to Lynn Pennington under the doctrine of *respondeat superior*.

5.  John Foster is an employee of the City of Poquoson's Police Department. John Foster works as a law enforcement officer with the rank of detective. At all relevant times identified in the Complaint, Detective Foster acted in the course and scope of her employment for the City of Poquoson.

## Jurisdiction & Venue

6.  This complaint presents federal questions giving rise to federal question jurisdiction. 28 U.S.C. § 1331 (2018). This court has supplemental jurisdiction over state-law causes of action. 28 U.S.C. § 1367(a) (2018).

7.  Venue is proper in this district because certain defendants reside in this judicial district, 28 U.S.C. § 1391(a), and a substantial part of the events and omissions giving rise to the

Plaintiff's claims occurred in this district, § 1391(b). Venue is proper in this district for the same reasons—defendants reside in the Newport News division, and facts giving rise to the Plaintiff's claims occurred in this division. Local R. 3(B)(2), (C).

## Background

8.  Alma Pennington passed away on September 29, 2018. Alma is survived by four children: Jane Gibson, Lynn Pennington, Danny Pennington, and Ann Agnew.

9.  Medical doctors discharged Alma from in-patient care to hospice care, in Jane Gibson's home, sometime in August 2018.

10. Several days before her death, on September 22, 2018, Alma signed a deed of gift conveying all of her real property or land to Lynn Pennington, one of her daughters. By gifting her land to Lynn Pennington, Alma chose not to leave her land to her children under Virginia's intestacy statutes, which would have given each child an equal twenty-five percent interest in Alma Pennington's land.

11. Due to a long-running family feud, Danny Pennington and Valora Pennington did not participate in Alma Pennington's end-of-life care. Notably, Danny Pennington and Valora Pennington were absent when Alma Pennington signed the deed of gift leaving her land to Lynn Pennington.

12. After Alma died, when Danny Pennington and Valora Pennington discovered that Danny Pennington had not been left any of Alma's land, on information and belief, Danny and Valora Pennington became enraged and decided to take action.

2

**Danny Pennington & Valora's Threats & Statements to Law Enforcement**

13.    First, sometime in November 2018, Danny Pennington hired a lawyer to threaten Lynn Pennington with both civil litigation and a criminal prosecution if Lynn Pennington did not sign a new deed conveying Alma's land to all four children in equal shares. The attorney's letter accused Lynn Pennington of "perpetuat[ing] a fraud on the court," "robbing" Danny Pennington of his intestate share of Alma Pennington's land," and "tak[ing] what was not rightfully yours by waiting until your mother was completely incapacitated."

14.    Second, sometime in December 2018, Valora Pennington maliciously and falsely told Sheriff Mark Barrick that Danny's "two sisters [Jane Gibson and Lynn Pennington] had gotten together and had this piece of paper drawn up and had gotten their mother to sign it and had stolen everything she had pretty much." At the time Valora Pennington made this statement, she had no evidence that Lynn Pennington or Jane Gibson had stolen anything from Alma Pennington. Sheriff Barrick told Lynn Pennington that he would assign one of his officers to the case to meet with Danny and Valora Pennington.

15.    Next, sometime in December 2018, Valora Pennington maliciously and falsely told Deputy April Edwards that "the sisters [Lynn Pennington and Jane Gibson] had gotten together and had their mother sign this ridiculous piece of paper and stolen everything from their brother when it should have been shared." At the time Valora Pennington made this statement, she had no evidence that Lynn Pennington or Jane Gibson had stolen anything from Alma Pennington.

16.   On January 16, 2019, Danny Pennington sued Lynn Pennington and Jane Gibson to set aside the deed of gift on the basis of undue influence (hereinafter "the Undue Influence Suit"). The amended complaint in the Undue Influence Suit alleged that "[Alma Pennington] was non-ambulatory and on heavy doses of medication believed to be morphine" at the time she signed the deed gifting land to Lynn Pennington. In reality, Alma Pennington was not under the influence of morphine at the time she signed the deed of gift.

17.   Sometime in approximately April 2019, Valora Pennington maliciously and falsely told Detective John Foster that "they [Lynn Pennington & Jane Gibson] had had this document drawn up and had had their mother sign it, even though she was in hospice care and on medication. Of course she had been on medications before hospice care, but more medications while in hospice care. And that it's wrong. What they've done is wrong."

18.   At multiple points, Danny Pennington and Valora Pennington made both written and oral statements to law enforcement in connection with their criminal complaints against Lynn Pennington. Valora Pennington, in particular, remained in close contact with law enforcement to assist in the criminal prosecution of Lynn Pennington throughout much of 2019. Deputy Edwards regularly communicated with Valora Pennington by text message and telephone. Valora Pennington also remained in contact with Detective Foster by email and, on information and belief, telephone.

19. After receiving Danny Pennington and Valora Pennington's multiple statements, law enforcement began investigating Lynn Pennington for financial exploitation of an elderly person, a felony.

20. Law enforcement—both Deputy Edwards and Detective Foster—knew of the civil litigation filed by Danny Pennington against Lynn Pennington. Still, neither Deputy Edwards nor Detective Foster corroborated Danny Pennington and Valora Pennington's criminal complaints against their adversary in civil litigation before obtaining a warrant for Lynn Pennington's arrest.

**The Law Enforcement Investigation & Charging Decision**

21. Detective April Edwards began investigating Lynn Pennington for the financial exploitation of an elderly person, a felony. During the course of the investigation, Deputy Edwards asked the Mathews County Commonwealth Attorney, Tom Bowen—the elected law enforcement official tasked with prosecuting crimes—for any communications between Mr. Bowen and Lynn Pennington, as Deputy Edwards had "an active case" pending against Lynn Pennington. By email dated February 12, Mr. Bowen responded to Deputy Edwards, warning that "[t]hese situations are normally resolved by civil suits and not criminal charges." Mr. Bowen then asked Edwards to call him.

22. On information and belief, after a reasonable opportunity for discovery, Lynn Pennington believes she can prove that Mr. Bowen instructed Edwards not to prosecute Lynn Pennington for any crime in connection with Alma Pennington's deed of gift.

23.   Sometime on or about February 15, 2019, April Edwards met with Tom Bowen to discuss her investigation into Lynn Pennington in further detail. After this meeting, Deputy Edwards transferred the criminal investigation into Lynn Pennington to the Poquoson Police Department.

24.   Allegedly, Edwards transferred the file to a different jurisdiction because Alma Pennington signed the deed of gift in the City of Poquoson. But, the crime Edwards sought to prosecute Lynn Pennington for (Virginia Code § 18.2-178.1) allowed the Commonwealth to arrest and prosecute Lynn Pennington in Mathews County. *See* § 18.2-178.1(B). On information and belief, after a reasonable opportunity for discovery, Lynn Pennington believes she can prove that Edwards's "transfer for jurisdictional reasons" is a mere pretext for the true explanation: Tom Bowen would not prosecute Lynn Pennington for any crime in connection with Alma Pennington's deed of gift. Regardless of the Commonwealth Attorney's charging decision, Deputy Edwards wanted to see Lynn Pennington prosecuted and arrested.

25.   Once the case arrived in a different jurisdiction (York-Poquoson), Deputy Edwards was eager to see Lynn Pennington's case assigned to a particularly "vicious prosecutor," to use Deputy Edwards's description in a text message exchange with Valora Pennington.

26.   Deputy Edwards wished to see Lynn Pennington prosecuted by a "vicious prosecutor" even though the only direct evidence in her possession—an interview from a notary public present when Alma Pennington signed the deed of gift—proved that Lynn was innocent of violating § 18.2-178.1. In mid-January 2019, Deputy Edwards interviewed the

notary who observed Alma sign the deed of gift and notarized Alma's signature. As the Commonwealth later admitted, the notary revealed to Deputy Edwards that (1) Alma was lucid; (2) Alma knew the identity of the notary; (3) Alma was sitting up in her bed and eating; (4) Alma "knew what was going on," and (5) Alma told the notary that she wanted her daughter to have some property.

27.   Despite Deputy Edwards's efforts to see Lynn Pennington prosecuted by a "vicious prosecutor," Tom Bowen was appointed the Acting Commonwealth Attorney heading the York-Poquoson Prosecution on or about March 15, 2019.

### The Arrest Warrant

28.   After Deputy Edwards transferred her case file (including the results of the notary interview) to the Poquoson Police Department, Detective Foster continued Deputy Edwards's (now baseless) investigation into Lynn Pennington.

29.   Detective John Foster ultimately obtained a felony arrest warrant for Lynn Pennington's arrest. Detective Foster sought an arrest warrant for violation of Virginia Code § 18.2-178.1—a crime outlawing the exploitation of the mentally incapacitated.

30.   Despite knowing that the complaining witnesses (Danny and Valora Pennington) were adversaries to Lynn Pennington in civil litigation, on information and belief, Detective Foster never sought to reconcile Danny and Valora Pennington's version of events with the evidence exculpating Lynn Pennington—the notary interview. This failure to act, under the circumstances, was unreasonable and resulted in an unlawful arrest.

31.    On information and belief, after a reasonable opportunity for discovery, Lynn Pennington believes she can prove that Detective Foster did not consult with Tom Bowen, any Commonwealth Attorney, or Assistant Commonwealth Attorney prior to obtaining the warrant for Lynn Pennington's arrest.

32.    Code § 18.2-178.1, the crime for which the Magistrate (Meghan Ann Cox) issued an arrest warrant, states:

> [A] It is unlawful for any person who knows or should know that another person suffers from mental incapacity to, through the use of that other person's mental incapacity, take, obtain, or convert money or other thing of value belonging to that other person with the intent to permanently deprive him thereof. Any person who violates this section shall be deemed guilty of larceny.
>
> . . .
>
> [D] As used in this section, "mental incapacity" means that condition of a person existing at the time of the offense described in subsection A that prevents him from understanding the nature or consequences of the transaction or disposition of money or other thing of value involved in such offense.

(emphasis added)

33.    At the time Detective Foster obtained the warrant for Lynn Pennington's arrest, he did not have in his possession any of Alma Pennington's medical records from the date Alma Pennington signed the deed of gift (September 22, 2018). The Mathews County Commonwealth Attorney later admitted this fact in a memorandum prepared to Detective Foster's attention. Put differently, Detective Foster had no direct evidence of Alma's "mental incapacity" at the time she signed the deed of gift.

34.   Worse, the only direct evidence from an independent witness at the time Alma Pennington signed the deed of gift (the notary public) demonstrated that Alma was of sound mind at the time she signed the deed of gift. As the Commonwealth admitted, the notary revealed that (1) Alma was lucid; (2) Alma knew the identity of the notary; (3) Alma was sitting up in her bed and eating; (4) Alma "knew what was going on," and (5) Alma told the notary that she wanted her daughter to have some property.

35.   Furthermore, any circumstantial evidence of mental incapacity relied upon by Detective Foster and Deputy Edwards came from an unreliable and uncorroborated source— specifically, Danny and Valora Pennington, both of whom had a vested outcome in civil litigation pending against Lynn Pennington at the time of Danny and Valora Pennington's complaints to law enforcement. Again, on information and belief, neither Detective Foster nor Deputy Edwards were able to corroborate evidence from Danny and Valora Pennington before Lynn Pennington's arrest. In fact, the direct evidence in their possession (the notary interview) actually tended to show Lynn's innocence.

36.   At the time Detective Foster obtained the arrest warrant, law enforcement had in its possession statements from Dr. James Larue, based in conjecture on facts unknown to Dr. Larue. Dr. Larue allegedly told law enforcement that he would never exceed a 30mg morphine dose in twenty-four (24) hours. Per Dr. Larue, a dosage of 5ml (equivalent to 10mg) of morphine every three to four hours would make a person quite impaired. Problematically, neither Dr. Larue, Deputy Edwards, nor Detective Foster had any knowledge of Alma Pennington's morphine dose on the date she signed the deed of gift— law enforcement, in fact, had no actual knowledge of any medication dosage for Alma

Pennington at the time she signed the deed of gift. The Commonwealth later admitted that law enforcement did not have any medical records in their possession from the date Alma Pennington signed the deed of gift at the time Detective Foster obtained a warrant for Lynn Pennington's arrest.

37.   In reality, before signing the deed of gift, Alma Pennington last ingested any morphine on September 20, 2018—two days earlier. Put differently, Alma Pennington was not under the effects of any morphine at the time she signed the deed of gift. Alma Pennington did not suffer from a "mental incapacity" at the time she signed the deed of gift. *See* Va. Code Ann. § 18.2-178.1(D).

### The Arrest & Its Aftermath

38.   On May 24, 2019 at approximately 10:30 pm, armed law enforcement officers from the Gloucester Police Department arrested Lynn Pennington pursuant to the warrant obtained by Detective Foster. Law enforcement arrested Lynn Pennington, at night, in her home.

39.   The arrest occurred on the Friday before Memorial Day Weekend. On information and belief, after a reasonable opportunity for discovery, Lynn Pennington believes she can prove that Danny Pennington & Valora Pennington, Deputy Edwards, and Detective Foster worked together to have Lynn Pennington arrested prior to a long holiday weekend—which could have resulted in Lynn Pennington remaining in custody until the following Tuesday.

40.  Both Deputy Edwards and Valora Pennington rejoiced at learning that Lynn Pennington had been arrested.

41.  Prior to the arrest, Lynn Pennington had never been arrested for any reason. At the time of the arrest and at all relevant times, Lynn Pennington worked as a licensed registered nurse. Lynn Pennington has suffered a great deal of humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

42.  Instead of indicting Lynn Pennington and pursuing a criminal prosecution to verdict, the Commonwealth dismissed the charge against Lynn Pennington *nolle prosequi*. The Commonwealth dismissed the charge against Lynn Pennington because law enforcement did not have any medical evidence of a "mental incapacity" at the time Alma Pennington signed the deed of gift. *See* Va. Code Ann. § 18.2-178.1(D).

43.  Tom Bowen, the appointed prosecutor, later declined to prosecute Lynn Pennington after reviewing Alma Pennington's medical records for dates of service surrounding September 22, 2018 (the date Alma Pennington signed the deed of gift). The Commonwealth declined to prosecute Lynn Pennington because it could not prove that Lynn Pennington committed any crime.

## COUNT I: FALSE IMPRISONMENT (all defendants)

44.  Lynn Pennington incorporates all preceding paragraphs by reference.

45. Detective Foster obtained an arrest warrant for Lynn Pennington, accusing her of violating Virginia Code § 18.2-178.1.

46. Detective Foster did not have probable cause to seek the arrest warrant from the magistrate. Detective Foster did not have any medical evidence that Alma Pennington remained impaired or under the influence of medication at the time she signed the deed of gift. Direct evidence in Detective Foster's possession (the notary interview) demonstrated that Alma was not mentally incapacitated at the time she signed the deed of gift, thus proving Lynn's innocence.

47. The arrest warrant that Foster obtained resulted in Lynn Pennington's arrest.

48. As a result of the arrest, Lynn Pennington has suffered a great deal of humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

49. Deputy Edwards, Danny Pennington, and Valora Pennington remain liable for Lynn Pennington's False Imprisonment because they actively "instigate[d], direct[ed], [and] procure[d]" Lynn Pennington's arrest. *Smith v. Button*, 43 Va. Cir. 379, 383 (Richmond 1997) (citing *Winters v. Campbell*, 148 W. Va. 710, 137 S.E.2d 188 (1964); *accord Chirag Shah v. Southwest Airlines*, No. 1:13-cv-1481, 2014 U.S. Dist. LEXIS 131004, at *4 (E.D. Va. Mar. 6, 2014) (applying Virginia law).

50. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington, Valora Pennington, John Foster, and April Edwards for their malicious actions taken to further Lynn Pennington's arrest. Alternatively, the law entitles Lynn Pennington to an award of compensatory and punitive damages against Danny Pennington, Valora Pennington, John Foster, and April Edwards for their reckless or negligent acts actions taken to further Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

## COUNT II: FOURTH AMENDMENT TORT FOR FALSE IMPRISONMENT
### (Detective Foster & Deputy Edwards)

51.   Lynn Pennington incorporates all preceding paragraphs by reference.

52.   Title 42 United States Code § 1983 enables citizens to sue state actors to vindicate violations of federal constitutional rights.

53.   Detective Foster, at all relevant times, worked for the City of Poquoson, making him an actor for the state as that term is used in § 1983. At all relevant times in the complaint, he worked for the City of Poquoson Police Department, thus acting under color of state law as that term is used in § 1983.

54.   Deputy Edwards, at all relevant times, worked for the Mathews County Sheriff, making her an actor for the state as that term is used in § 1983. At all relevant times in the complaint, she worked for the Mathews Sheriff Department, thus acting under color of state law as that term is used in § 1983.

55. The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The same amendment prohibits the issuance of an arrest warrant without probable cause. *Id*.

56. Detective Foster violated the Fourth Amendment to the United States Constitution when he obtained a warrant for Lynn Pennington's arrest without probable cause. Deputy Edwards violated the Fourth Amendment to the United States Constitution when she perpetuated and prolonged an investigation into Lynn Pennington—in close cooperation with Lynn Pennington's aggrieved relatives—that lacked probable cause.

57. As a result of the arrest, which Detective Foster and Deputy Edwards caused, Lynn Pennington has suffered a great deal of humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

58. Detective Foster and Deputy Edwards remain liable for Lynn Pennington's false imprisonment, in violation of the Fourth Amendment, because they were integral participants in causing Lynn Pennington's arrest.

59. Title 42 U.S.C. § 1988 entitles Lynn Pennington to her attorneys' fees and costs for the successful prosecution of this Fourth Amendment claim.

60. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants John Foster and April Edwards for their malicious actions taken to further Lynn Pennington's arrest. Alternatively, the law entitles Lynn Pennington to an

award of compensatory and punitive damages against Defendants John Foster and April Edwards for their reckless or negligent acts actions taken to further Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

### **COUNT III: MALICIOUS PROSECUTION (all defendants)**

61.  Lynn Pennington incorporates all preceding paragraphs by reference.

62.  Beginning in December 2018 and continuing, Danny Pennington and Valora Pennington falsely, maliciously, and without any reasonable or probable cause whatsoever, told law enforcement (in substance) that Lynn Pennington and Jane Gibson stole Alma Pennington's real property—"everything she had"—by forcing Alma Pennington to convey land to her daughter Lynn Pennington while she remained under the influence of medication believed to be morphine.

63.  When Danny Pennington and Valora Pennington reported Lynn Pennington to law enforcement, neither Danny Pennington nor Valora Pennington had any knowledge of Alma Pennington's health at the time she actually signed the deed of gift.

64.  Through their statements, Danny Pennington and Valora Pennington instituted and cooperated with a criminal prosecution for which there existed no probable cause to arrest Lynn Pennington.

65.  Both Deputy Edwards and Detective Foster participated in the criminal investigation of Lynn Pennington, which they both knew or should have known lacked any merit or probable cause for the continuance of a criminal investigation. Neither Detective Foster

nor Deputy Edwards had evidence of Alma's "mental incapacity" at the time she signed the deed of gift. *See* Va. Code Ann. § 18.2-178.1(D). Any circumstantial evidence of mental incapacity relied upon by Detective Foster and Deputy Edwards came from an unreasonable and unreliable source—specifically, Danny and Valora Pennington, both of whom had a vested outcome in civil litigation pending against Lynn Pennington at the time of Danny and Valora Pennington's complaints to law enforcement. The complete lack of probable cause for Lynn Pennington's arrest evinces Edwards and Foster's malice in participating in the prosecution of Lynn Pennington.

66. No reasonable law enforcement officer would have believed that probable cause existed to arrest Lynn Pennington.

67. Law enforcement ultimately arrested Lynn Pennington for violating Virginia Code § 18.2-178.1, but the prosecutor dismissed these charges *nolle prosequi*. The criminal charges were later expunged. Put differently, the criminal prosecution terminated in Lynn Pennington's favor.

68. As a result of the criminal prosecution of Lynn Pennington, which all Defendants caused and participated in, Lynn Pennington has suffered a great deal of humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

69. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington, Valora Pennington, John Foster, and April Edwards for their malicious actions taken to further Lynn Pennington's arrest and

criminal prosecution. Alternatively, the law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington, Valora Pennington, John Foster, and April Edwards for their reckless or negligent acts actions taken to further Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

70. Virginia law entitles Lynn Pennington to attorneys' fees and costs for the successful prosecution of this action for malicious prosecution.

## COUNT IV: FOURTH AMENDMENT TORT FOR MALICIOUS PROSECUTION
### (Detective Foster & Deputy Edwards)

71. Lynn Pennington incorporates all preceding paragraphs by reference.

72. Title 42 United States Code § 1983 enables citizens to sue state actors to vindicate violations of federal constitutional rights.

73. Detective Foster, at all relevant times, worked for the City of Poquoson, making him an actor for the state as that term is used in § 1983. At all relevant times in the complaint, he worked for the City of Poquoson Police Department, thus acting under color of state law as that term is used in § 1983.

74. Deputy Edwards, at all relevant times, worked for Mathews County Sheriff, making her an actor for the state as that term is used in § 1983. At all relevant times in the complaint, she worked for the Mathews Sheriff Department, thus acting under color of state law as that term is used in § 1983.

75.    The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Circuit recognizes a Fourth Amendment constitutional tort for malicious prosecution. *See Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir. 2000).

76.    On information and belief, beginning in December 2018 and continuing, Danny Pennington and Valora Pennington falsely, maliciously, and without any reasonable or probable cause whatsoever, told law enforcement (in substance) that Lynn Pennington and Jane Gibson stole Alma Pennington's real property—"everything she had"—by forcing Alma Pennington to convey land to her daughter Lynn Pennington while she remained under the influence of medication believed to be morphine.

77.    When Danny Pennington and Valora Pennington reported Lynn Pennington to law enforcement, neither Danny Pennington nor Valora Pennington had any knowledge of Alma Pennington's health at the time she actually signed the deed of gift.

78.    Through their statements, Danny Pennington and Valora Pennington instituted and cooperated with a criminal prosecution for which there existed no probable cause to arrest Lynn Pennington.

79.    Both Deputy Edwards and Detective Foster participated in the criminal investigation of Lynn Pennington, which they both knew or should have known lacked any merit or probable cause for the continuance of a criminal investigation. Neither Detective Foster nor Deputy Edwards had evidence of Alma's "mental incapacity" at the time she signed the deed of gift. Any circumstantial evidence of mental incapacity relied upon by

18

Detective Foster and Deputy Edwards came from an unreasonable and unreliable source—specifically, Danny and Valora Pennington, both of whom had a vested outcome in civil litigation pending against Lynn Pennington at the time of Danny and Valora Pennington's complaints to law enforcement. The complete lack of probable cause for Lynn Pennington's arrest evinces Edwards and Foster's malice in participating in the prosecution of Lynn Pennington.

80. No reasonable law enforcement officer would have believed that probable cause existed to arrest Lynn Pennington.

81. Law enforcement ultimately arrested Lynn Pennington for violating Virginia Code § 18.2-178.1, but the prosecutor dismissed these charges *nolle prosequi*. The criminal charges were later expunged. Put differently, the criminal prosecution terminated in Lynn Pennington's favor.

82. As a result of the criminal prosecution of Lynn Pennington, which all Defendants caused and participated in, Lynn Pennington has suffered a great deal of humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

83. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants John Foster and April Edwards for their malicious actions taken to further Lynn Pennington's arrest and criminal prosecution. Alternatively, the law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants John Foster and April Edwards for their reckless or negligent acts actions taken to further

Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

84. Title 42 U.S.C. § 1988 entitles Lynn Pennington to her attorneys' fees and costs for the successful prosecution of this Fourth Amendment claim.

## COUNT V: ABUSE OF PROCESS (Defendants Danny Pennington & Valora Pennington)

85. Lynn Pennington incorporates all preceding paragraphs by reference.

86. After learning of Alma Pennington's gift of her land to Lynn Pennington, Danny Pennington and Valora Pennington began attempting to extort from Lynn Pennington the land conveyed to her by her late mother, Alma Pennington.

87. Specifically, through their agent, Danny Pennington and Valora Pennington first threatened to initiate civil and criminal legal proceedings against Lynn Pennington unless she signed a deed conveying the gifted land in equal shares to Lynn Pennington and her siblings, including Danny Pennington.

88. On information and belief, beginning in December 2018 and continuing, Danny Pennington and Valora Pennington falsely, maliciously, and without any reasonable or probable cause whatsoever, told law enforcement (in substance) that Lynn Pennington and Jane Gibson stole Alma Pennington's real property—"everything she had"—by forcing Alma Pennington to convey land to her daughter Lynn Pennington while she remained under the influence of medication believed to be morphine.

89.  When Danny Pennington and Valora Pennington reported Lynn Pennington to law enforcement, neither Danny Pennington nor Valora Pennington had any knowledge of Alma Pennington's health at the time she actually signed the deed of gift.

90.  Danny Pennington then initiated a civil action against Lynn Pennington and the rest of her siblings to set aside the deed of gift based on undue influence.

91.  During the pendency of the Undue Influence litigation, Danny Pennington & Valora Pennington continued to cooperate and actively participate in the criminal investigation of Lynn Pennington—all while they sought to obtain economic benefits from Lynn Pennington in civil litigation.

92.  On information and belief, after a reasonable opportunity for discovery, Lynn Pennington can prove that Danny Pennington and Valora Pennington reported Jane Gibson and Lynn Pennington to law enforcement to coerce Lynn Pennington into conveying land to Danny Pennington. Danny Pennington had no right or title, legal or equitable, in Lynn Pennington's land at the time he made statements to law enforcement, hoping to see Lynn Pennington imprisoned.

93.  As a proximate result of Danny Pennington and Valora Pennington's resort to criminal process for the purpose of obtaining economic benefits (land) and advantage in civil litigation (by coercing Lynn Pennington into signing a new deed), Lynn Pennington has been caused to suffer humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

94. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington and Valora Pennington for their malicious actions taken to further Lynn Pennington's arrest and criminal prosecution. Alternatively, the law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington and Valora Pennington for their reckless or negligent acts actions taken to further Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

**COUNT VI: Civil Conspiracy (Danny Pennington & Valora Pennington)**

95. Lynn Pennington incorporates all preceding paragraphs by reference.

96. After learning of Alma Pennington's gift of her land to Lynn Pennington, Danny Pennington and Valora Pennington began attempting to extort from Lynn Pennington the land conveyed to her by her late mother, Alma Pennington.

97. Danny Pennington and Valora Pennington formed an agreement, whether express or implied, to both threaten Lynn Pennington with civil litigation, while using criminal legal process as a lever to force Lynn Pennington into signing a new deed. To accomplish their goal of extorting property from Lynn Pennington, Danny Pennington & Valora Pennington made recklessly false statements to law enforcement, which ultimately resulted in the arrest of Lynn Pennington.

98. Through their agent, Danny Pennington and Valora Pennington first threatened to initiate civil and criminal legal proceedings against Lynn Pennington unless she signed a

deed conveying the gifted land in equal shares to Lynn Pennington and her siblings, including Danny Pennington.

99. On information and belief, beginning in December 2018 and continuing, Danny Pennington and Valora Pennington falsely, maliciously, and without any reasonable or probable cause whatsoever, told law enforcement (in substance) that Lynn Pennington and Jane Gibson stole Alma Pennington's real property—"everything she had"—by forcing Alma Pennington to convey land to her daughter Lynn Pennington while she remained under the influence of medication believed to be morphine.

100. When Danny Pennington and Valora Pennington reported Lynn Pennington to law enforcement, neither Danny Pennington nor Valora Pennington had any knowledge of Alma Pennington's health at the time she actually signed the deed of gift.

101. Danny Pennington then initiated a civil action against Lynn Pennington and the rest of her siblings to set aside the deed of gift based on undue influence.

102. During the pendency of the Undue Influence litigation, Danny Pennington & Valora Pennington continued to cooperate and actively participate in the criminal investigation of Lynn Pennington.

103. On information and belief, after a reasonable opportunity for discovery, Lynn Pennington can prove that Danny Pennington and Valora Pennington reported Jane Gibson and Lynn Pennington to law enforcement to coerce Lynn Pennington into conveying land to Danny Pennington. Danny Pennington had no right or title, legal or equitable, in Lynn

Pennington's land at the time he made statements to law enforcement, hoping to see Lynn Pennington imprisoned.

104. As a proximate result of Danny Pennington and Valora Pennington's joint action, Lynn Pennington has been caused to suffer humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

105. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington and Valora Pennington for their malicious actions taken together to further Lynn Pennington's arrest and criminal prosecution. Alternatively, the law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington and Valora Pennington for their reckless or negligent acts actions taken to further Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

### COUNT VII: Statutory Conspiracy (Va. Code Ann. §§ 18.2-499—500) (Danny Pennington & Valora Pennington)

106. Lynn Pennington incorporates all preceding paragraphs by reference.

107. After learning of Alma Pennington's gift of her land to Lynn Pennington, Danny Pennington and Valora Pennington began attempting to extort from Lynn Pennington the land conveyed to her by her late mother, Alma Pennington.

108. Danny Pennington and Valora Pennington formed an agreement, whether express or implied, to both threaten Lynn Pennington with civil litigation, while using criminal legal

process as a lever to force Lynn Pennington into signing a new deed. To accomplish their goal of extorting property from Lynn Pennington, Danny Pennington & Valora Pennington made recklessly false statements to law enforcement, which ultimately resulted in the arrest of Lynn Pennington.

109.  Through their agent, Danny Pennington and Valora Pennington first threatened to initiate civil and criminal legal proceedings against Lynn Pennington unless she signed a deed conveying the gifted land in equal shares to Lynn Pennington and her siblings, including Danny Pennington.

110.  On information and belief, beginning in December 2018 and continuing, Danny Pennington and Valora Pennington falsely, maliciously, and without any reasonable or probable cause whatsoever, told law enforcement (in substance) that Lynn Pennington and Jane Gibson stole Alma Pennington's real property—"everything she had"—by forcing Alma Pennington to convey land to her daughter Lynn Pennington while she remained under the influence of medication believed to be morphine.

111.  When Danny Pennington and Valora Pennington reported Lynn Pennington to law enforcement, neither Danny Pennington nor Valora Pennington had any knowledge of Alma Pennington's health at the time she actually signed the deed of gift.

112.  Danny Pennington then initiated a civil action against Lynn Pennington and the rest of her siblings to set aside the deed of gift based on undue influence.

113. During the pendency of the Undue Influence litigation, Danny Pennington & Valora Pennington continued to cooperate and actively participate in the criminal investigation of Lynn Pennington.

114. On information and belief, after a reasonable opportunity for discovery, Lynn Pennington can prove that Danny Pennington and Valora Pennington reported Jane Gibson and Lynn Pennington to law enforcement to coerce Lynn Pennington into conveying land to Danny Pennington. Danny Pennington had no right or title, legal or equitable, in Lynn Pennington's land at the time he made statements to law enforcement hoping to see Lynn Pennington imprisoned.

115. As a proximate result of Danny Pennington and Valora Pennington's joint action, Lynn Pennington has been caused to suffer humiliation, injury to her mental health, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, arrest, disgrace, scandal, and injury to her reputation and feelings.

116. The law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington and Valora Pennington for their malicious actions taken together to further Lynn Pennington's arrest and criminal prosecution. Alternatively, the law entitles Lynn Pennington to an award of compensatory and punitive damages against Defendants Danny Pennington and Valora Pennington for their reckless or negligent acts actions taken to further Lynn Pennington's arrest, which clearly evinces a conscious disregard for Lynn Pennington's rights.

117.  Virginia Code § 18.2-500 entitles Lynn Pennington to treble compensatory damages, reasonable attorneys' fees, and the costs incurred prosecuting this action.

### COUNT VIII: Violation of the Virginia Computer Crimes Act (as to Defendant Valora Pennington) (Va. Code Ann. §§ 18.2-152.7, 152.12)

118.  Lynn Pennington incorporates all preceding paragraphs by reference.

119.  Valora Pennington used a computer to perpetuate a criminal investigation of Lynn Pennington, which was, on information and belief, the primary goal of a conspiracy to extort property from Lynn Pennington.

120.  As a proximate cause of Valora Pennington's use of a computer, Lynn Pennington suffered physical injury, including but not limited to her arrest.

121.  Virginia Code § 18.2-152.12(A) entitles Lynn Pennington to the costs incurred prosecuting this claim for violation of the Virginia Computer Crimes Act.

### Prayer for Relief

**WHEREFORE**, Lynn Pennington respectfully requests that this Court enter judgment in her favor against all Defendants jointly and severally, for $250,000 in compensatory damages, treble damages as allowed by statute, and $250,000 in punitive damages as to Defendants Danny Pennington, Valora Pennington, John Foster, and April Edwards (and Sheriff Mark Barrick by *respondeat superior*), with prejudgment interest and post-judgment interest, until such time as the judgment is satisfied in full, along with court costs, reasonable attorneys' fees, and all other expenses incurred by Lynn Pennington in this action, in addition to any further relief this Court deems appropriate.

## Jury Demand

**A jury trial is demanded.**

<div style="margin-left:40%">

**LYNN PENNINGTON**

__/s/_____
Christopher R. Hedrick (VSB 34885)
Bradley D. Reeser (VSB 89511)
**MASON, MASON, WALKER & HEDRICK P.C.**
11848 Rock Landing Drive, Suite 201
Newport News, VA 23606
Telephone:  (757) 873-3909
Facsimile:   (757) 873-1781
chedrick@masonwalker.com
breeser@masonwalker.com
*Counsel for Lynn Pennington*

</div>